UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALEB MENDOZA, et al., | Case No. 24-cv-08738-VC  (LJC) |
| Plaintiffs, | |
| v. | **ORDER RESOLVING DISCOVERY BRIEF REGARDING 30(B)(6) DEPOSITION TOPICS** |
| TESLA, INC., | Re: Dkt. No. 54 |
| Defendant. | |

Before the Court is the parties' joint letter regarding eight disputed deposition topics from Plaintiffs' 30(b)(6) deposition notice to Tesla.  ECF No. 54.  Having considered the parties' arguments, the record in this case, and the relevant legal authorities, the Court denies Tesla's request for a protective order prohibiting testimony on Topic Nos. 2-5 and 11.

**I.      Background**

The Court assumes the parties' familiarity with the overall factual and procedural history of this case, and provides the following summary of Plaintiffs' allegations to contextualize the instant dispute.  Plaintiffs allege that Genesis Giovanni Mendoza Martinez (Giovanni or Decedent) purchased a used Tesla Model S (the Vehicle) from a third party in March 2021.  *See* ECF No. 1-2 (Compl.) ¶ 50.  The Vehicle, which was manufactured in 2014, operated on an early Tesla operating system known as Hardware 1 (HW1).  *Id.* ¶ 71.  Early in the morning on February 18, 2023, Giovanni was driving the Subject Vehicle with the car's "Autopilot" feature engaged with his brother, Plaintiff Caleb Mendoza, in the passenger seat.  *Id.* ¶ 52.  The Subject Vehicle crashed into a parked fire truck.  Giovanni was killed and Caleb was severely injured.  *Id.*  Plaintiffs proceeded to bring claims against Tesla for strict and negligent products liability, fraudulent and

negligent misrepresentation, concealment,[1] negligent infliction of emotional distress, and wrongful death. Plaintiffs' claims center on Tesla's promotion of its vehicles' so-called "Autopilot" function and of the Subject Vehicle's vision system's alleged inability to identify flashing emergency lights as a caution signal. *See* Compl. ¶¶ 68, 95. Plaintiffs allege that in September 2021, "Tesla made a software update to enhance system detectability for caution lights associated with emergency vehicles," although this "software fix would not work on the Subject Vehicle" as the fix was not compatible with HW1. *Id.* ¶¶ 69, 71.

## II.   LEGAL STANDARD

Tesla seeks a protective order pursuant to Federal Rules of Civil Procedure 26(b)(2)(C) and 26(c)(1)(A). *See* ECF No. 54 at 2. Rule 26(c)(1)(A) provides that a court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by forbidding or otherwise limiting the discovery sought. "The burden is upon the party seeking the order to show good cause by demonstrating harm or prejudice that will result from the discovery." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004) (internal quotations omitted). "If a court finds particularized harm will result from disclosure," it then must balance "the public and private interests to decide whether a protective order is necessary." *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002).

Rule 26(b)(2)(C) provides that courts "must limit the frequency or extent of discovery" if it determines that, among other things, the "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." In turn, Rule 26(b)(1) provides that, unless otherwise limited by the court:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Generally, the party seeking discovery "bears the burden of showing his request satisfies the

---

[1] Tesla's motion for judgment on the pleadings has been granted as to Plaintiffs' concealment claim. *See* ECF No. 25.

United States District Court
Northern District of California

United States District Court
Northern District of California

relevance requirement of Rule 26," whereas the "party resisting discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995); *Scalia v. Int'l Longshore and Warehouse Union*, 337 F.R.D. 281, 288 (N.D. Cal. 2020) (internal quotations omitted). "Rule 26(b) is liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence." *Scalia*, 377 F.R.D. at 288 (internal quotations omitted); *see* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable.").

Rule 30(b)(6) authorizes parties to name as a deponent a "public or private corporation, a partnership, an association, a governmental agency, or other entity" to testify on the corporation or entity's behalf. Fed. R. Civ. P. 30(b)(6); *see La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The 30(b)(6) deposition notice "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). The corporation or entity must then designate a deponent (or deponents) to testify on their behalf and prepare their deponent to "fully and unevasively answer questions about the designated subject matter." *Great Am. Ins. Co. of New York v. Vegas Const. Co.*, 251 F.R.D. 534, 539 (D. Nev. 2008) (internal quotations omitted). "Given the obligation imposed on the noticed party to educate the witness, there is a reciprocal obligation imposed on the deposing party to draft the Rule 30(b)(6) notice with care." *Alvarado-Herrera v. Acuity*, 344 F.R.D. 103, 107 (D. Nev. 2023), *aff'd sub nom. Alvarado-Herrera v. Acuity A Mut. Ins. Co.*, No. 22-cv-00438, 2023 WL 5035323 (D. Nev. Aug. 4, 2023); *see Apple Inc. v. Samsung Elecs. Co.*, No. C 11-1846, 2012 WL 1511901, at *2 (N.D. Cal. Jan. 27, 2012) (explaining that the responding party's obligation to prepare its deponent to testify about the noticed topics becomes "increasingly impossible as the number and breadth of noticed subject areas expand"). "Courts have not hesitated to issue protective orders when corporations are asked to respond to overly broad or unfocused Rule 30(b)(6) deposition notices." *Alvarado-Herrera*, 344 F.R.D. at 108 (internal quotations omitted).

### III.   ANALYSIS

Plaintiffs' 30(b)(6) deposition notice included twelve topics. Tesla objects to eight:

Plaintiffs' Topics 2-8 and 11.  The Court notes, at the outset, that Plaintiffs' deposition notice is not facially overbroad, does not try to cover "every conceivable facet" of the litigation, and does not seek "privileged information or the bases for the deponent-party's legal contentions."  *La. Pac. Corp.*, 285 F.R.D. at 487-88; *Alvarado-Herrera*, 344 F.R.D. at 110.  This differentiates the instant dispute from cases like *Apple v. Samsung*, where the court determined that the defendant's "229–topic notice" was facially excessive and imposed an "impracticable demand" on the plaintiff.  2012 WL 1511901, at *2; *see also Tapestry, Inc. v. Last Brand, Inc.*, No. 25-cv-03082, 2026 WL 673798, at *1 (N.D. Cal. Mar. 10, 2026) (finding notice with 45 topics tethered to the issues in the case was not facially excessive and declining to issue protective order).  Tesla's arguments regarding the topics at issue are addressed in turn.

### A.     Topics 2-4

The Subject Vehicle, a 2014 Model S, used HW1.  Topics 2 through 4 ask about the ontology[2] for caution lights in Tesla's vehicles containing subsequent versions of this hardware (HW2, HW2.5, and HW3, respectively).  ECF Nos. 54 at 2; 54-2 at 6-7.  Tesla explains that HW2, 2.5, and 3 "all comprise different components than HW1, including different vision processing systems," whereas the vision processing system in HW1 was not developed by Tesla and was in fact supplied by a third party.  *Id.*  "Vehicles equipped with HW2, 2.5, and 3 have capabilities and functionalities that were not technologically feasible when HW1 was developed and released," and, Tesla explains, "due to structural and technical constraints, it is not reasonably feasible to retrofit HW1 vehicles to later hardware versions."  *Id.*  Tesla argues that subsequent vehicles' hardware is not discoverable when this case involves only a "2014 vehicle with a different vision processing system, and different ADAS hardware."  *Id.* at 2-3.[3]

---

[2] Tesla explains that in this context, ontology "refers to the rules provided to human analysts to label and annotate images reflecting what a neural network within a vision processing system is expected to output."  ECF No. 54 at 2 (footnotes omitted).  Plaintiffs apparently provided a competing definition in their 30(b)(6) notice, to which Tesla objects.  *See id.*  As the Court does not have the full deposition notice, it does not address which of these competing definitions should prevail.  Furthermore, neither party argues that the competing definitions involve a distinction that is material the discovery dispute at hand.

[3] "ADAS" stands for Advanced Drivers Assistance System, and refers to technology that automates certain aspects of driving.  Compl. ¶¶ 18, 82.

United States District Court
Northern District of California

Plaintiffs counter that under California law, "evidence of post-incident design changes" is admissible to prove a design defect, and thus fair game for discovery. ECF No. 54 at 4. This is a correct statement of California law: although evidence of post-incident remediation is inadmissible to "prove negligence or culpable conduct," such evidence *is* admissible where a "defendant is alleged to be liable under the theory of strict liability." Cal. Evid. Code § 1151; *Ault v. Int'l Harvester Co.*, 13 Cal. 3d 113, 117 (1974). In contrast, under federal evidentiary rules, evidence of subsequent measures "taken that would have made an earlier injury or harm less likely to occur" is not admissible to prove negligence, culpable conduct, product defect, or a need for a warning or instruction. Fed. R. Evid. 407. But Plaintiffs' assumption that California rather than federal admissibility rules apply is misplaced, or, at least, underdeveloped. "[T]he Federal Rules of Evidence ordinarily govern in diversity cases," such as this action. *Wray v. Gregory*, 61 F.3d 1414, 1417 (9th Cir. 1995). However, to Plaintiffs' point, state evidence rules may apply when the "state evidence rule is 'intimately bound up' with the rights and obligations being asserted." *Id.* (quoting *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). The Ninth Circuit has held that certain California statutes regarding admissibility of evidence embody "substantive state policy" and thus apply in federal diversity cases, *see Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 667 (9th Cir. 2003), but the Court is skeptical that California Evidence Code Section 1151 is so "'intimately bound up' with the rights and obligations being asserted" so as it displace federal law. *Wray*, 61 F.3d at 1417; *see Rosa v. Taser International*, 684 F.3d 941, 948-49 (9th Cir. 2012) (approving of Seventh Circuit decision, *Flaminio v. Honda Motor Co.*, 733 F.2d 463, 471 (7th Cir. 1984), that held that Rule 407 "was sufficiently procedural in nature to apply in diversity cases under" the *Erie* doctrine).

But this is not dispositive, because even under the Federal Rules of Evidence subsequent remedial measures may be admissible non-liability purposes, "such as impeachment or —if disputed—proving ownership, control, or the feasibility of precautionary measures." Fed. R. Evid. 407. Tesla argues that it was not "reasonably feasible to retrofit HW1 vehicles" such as the Subject Vehicle "to later hardware versions" including HW2, 2.5, and 3, and, in their Answer, assert that the Subject Vehicle "has a reasonably safe design as measured by the appropriate test

5

under the applicable state law." ECF Nos. 54 at 1, 1-4 at 5. Under California products liability law, liability may turn on "whether the product is as safely designed as it should be, considering the feasibility and cost of alternative designs." *Kim v. Toyota Motor Corp.*, 6 Cal. 5th 21, 26, 30 (2018). Without reaching the narrower issue of whether evidence regarding HW2-3 will be admissible at trial, the Court concludes that this evidence regarding the subsequent hardware, to the extent it may support or undercut the parties' arguments regarding feasibility, is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

As Tesla has not made any nonconclusory arguments that preparing a witness to testify as to Topic Nos. 2-4 would be overly burdensome, or that harm or prejudice would result if its witness is questioned about the topics, and considering the importance of the issues at stake in the action and the parties' relative access to relevant information, the Court concludes that Plaintiffs may question Tesla's witness about these topics. *See* Fed. R. Civ. P. 26(b)(1); *Rivera*, 364 F.3d at 1063.

**B.     Topic No. 11**

Topic No. 11 asks about Tesla's decision, in 2021, "to deploy a software update to certain vehicles equipped with Hardware 3 for enhanced system detectability for activated caution lights." ECF No. 54-1 at 11. For the reasons explained above regarding Plaintiffs' entitlement to seek discovery regarding feasibility, Plaintiffs may ask Tesla about Topic No. 11. Moreover, as Tesla notes, Topic No. 11 is related to Topic No. 12, which asks about Tesla's "decision not to deploy a software update to certain vehicles equipped with Hardware 1 for enhanced system detectability for activated caution lights." *Id.* at 11-12; ECF No. 54 at 3 n.10. Subject to objections, Tesla has agreed to produce a witness to testify as to Topic No. 12. The Court views Topic Nos. 11 and 12 as two sides of the same coin, and given that Tesla will be producing a witness to testify about Tesla's decision not to deploy a software update to HW1 vehicles, it would be unreasonably restrictive (again, absent any articulation by Tesla of how preparing their witness would be unduly burdensome) to prohibit Plaintiffs from asking about the corollary—Tesla's decision *to* deploy a software update to later models.

C.    Topic Nos. 5-8

Plaintiffs' Topic Nos. 5-7 ask about Tesla's advertisements and marketing regarding its cars' Autopilot function from 2013 to the date of the accident, and Topic No. 8 asks about Tesla's review of blogs and websites regarding Autopilot during the same period. ECF No. 54-1 at 8–9. Tesla argues that these topics seek irrelevant information and are overbroad. ECF No. 54 at 3. It requests that the topics be limited to public statements Tesla drafted and published between 2013 and March 2021 "regarding HW1 Autopilot functionality and capabilities that Decedent purportedly saw and relied upon before purchasing the vehicle, and which Plaintiffs identify prior to the deposition on these Topics." *Id.* Plaintiffs argue that their claims are "not limited to point-of-sale reliance" but rather include Tesla's ongoing misrepresentation and concealment. *Id.* at 6. They argue that Tesla continuing "to overstate Autopilot's capabilities despite its limitations" is relevant to punitive damages and is not strictly limited to Tesla's statements regarding HW1. *Id.*

Tesla's request for a protective order barring Plaintiffs from asking about these topics (or, in the alternative, limiting these topics) is denied. In broad terms, Plaintiffs allege that Tesla labeling its ADAS technology as "Autopilot" led Tesla drivers, including the Decedent, to believe that Tesla's vehicles could operate autonomously, and that Decedent "reasonably relied on [Tesla's] representations" regarding Tesla's autonomous capabilities when he bought and used the Subject Vehicle. *See* Compl. ¶¶ 118-24; ECF No. 25 at 1 (explaining that "[t]he 'Autopilot' name is plausibly misleading"). Plaintiffs are entitled to discovery regarding Tesla's public statements regarding Autopilot generally, as well as Tesla's awareness of consumer complaints or comments regarding Autopilot, as this may bear on their misrepresentation claims. The scope of Tesla's discoverable statements are not limited to those that specifically refer to HW1. Whether evidence of public statements regarding Autopilot that are not tethered to HW1 will be admitted at trial, or whether Plaintiffs will be able to prevail on their misrepresentation claims, is not the appropriate litmus test for discoverability. Again, absent a showing by Tesla that preparing a witness to testify as to these topics would be overly burdensome or that particularized harm would result, the Court declines to prohibit Plaintiffs from asking about these topics. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) (affirming trial court's "broad discretion" in permitting or denying

discovery).

Tesla's request for a protective order barring Topics 2-8 and 11 is accordingly DENIED.

**IT IS SO ORDERED.**

Dated: March 25, 2026

_____
LISA J. CISNEROS
United States Magistrate Judge

United States District Court
Northern District of California

8